IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR20-4051-LTS |
| | ) | |
| vs. | ) | |
| | ) | |
| CARMELO VALDEZ ROMERO, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS RESISTANCE TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

I.    ARGUMENT – JUDGMENT OF ACQUITTAL ........................................... 1

    A.    SUFFICIENT EVIDENCE PRESENTED FOR DEFENDANT'S CONVICTION BY A REASONABLE-MINDED JURY ............................. 2

II.    CONCLUSION ....................................................................................... 14

COMES NOW the United States of America and respectfully files its resistance to defendant's motion for judgment of acquittal.

On February 25, 2022, defendant was found guilty by jury verdict of possession with intent to distribute 50 grams or more of actual/pure methamphetamine (Count 4). (Dkt 169). Defendant was acquitted on Count 1. (*Id.*, Dkt 170). Defendant has filed a motion for judgment of acquittal. (Dkt 177). The government now responds.

**I.    ARGUMENT – JUDGMENT OF ACQUITTAL**

Under Federal Rule of Criminal Procedure 29, "the court 'must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain

1

a conviction.'" Fed. R. Crim. 29(a). In *United States v. Hassan*, 844 F.3d 723, 725

(8th Cir. 2016), the Eighth Circuit stated,

> Rule 29(c) permits defendant to move the court to set aside a verdict
> and enter judgment of acquittal after trial; however, a district court
> has very limited latitude to do so and must not assess witness
> credibility or weigh evidence, and the evidence must be viewed in a
> light most favorable to the government.

Quoting *United States v. Stacks*, 821, F.3d 1038, 1043 (8th Cir. 2016). The court

must uphold the jury's verdict so long as a reasonable-minded jury could have found

the defendant guilty beyond a reasonable doubt. *United States v. Peters*, 462 F.3d

953, 957 (8th Cir. 2006). Further, courts "must uphold the jury's verdict even where

the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence."

*Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)).

For the reasons stated below, there was sufficient evidence at trial to sustain

defendant's conviction and therefore the court should deny defendant's motion for

judgment of acquittal.

### A. SUFFICIENT EVIDENCE PRESENTED FOR DEFENDANT'S CONVICTION BY A REASONABLE-MINDED JURY

Defendant contends there is insufficient evidence to sustain his conviction.

Specifically, defendant argues because the jury acquitted on one count (conspiracy

to distribute methamphetamine) and found defendant guilty on another count

(possession with intent to distribute methamphetamine) the verdict reflects

inconsistent findings of fact which then constitutes a basis for a judgment of

acquittal. (Dkt 177-1 at page 2). Defendant is incorrect.

The evidence presented by the government clearly established defendant was involved in the possession with intent to distribute methamphetamine, whether directly or while aiding and abetting another or others (both as found by the jury verdict).

Agents Ben Gill and Chad Schmitt testified regarding the inception of this investigation in about early 2020, and the investigative targeting of first co-conspirator/co-defendant Delfina Torres-Perez and later other co-conspirators, including defendant, Carmelo Valdez Romero, with surveillance, cooperating witnesses, the seizure evidence in various searches, and one or more controlled methamphetamine buy(s) and the seizure of evidence, particularly multiple pounds of methamphetamine in various vehicles and a rural residential property. (Trial Transcript pgs. 43-93, 101-172; 212-237).

Agents Gill and Schmitt testified to the use of two confidential informants (CIs), namely, Kerri Hageman/Delgado and/or William Hageman) in this case, to target co-conspirator Delfina Torres-Perez and her associates in two one-pound controlled-buy operations, including on or about March 10 and March 17, 2020. Agents Gill and Schmitt testified to their information, belief, and surveillance conduct regarding Torres-Perez's trip to California to re-supply with pounds of methamphetamine. Agents used their knowledge from surveillance of target Torres-Perez, through CI Delgado/Hagemen to attempt a traffic stop/search of the rental vehicle driven by Torres-Perez (and as later learned, coconspirator Dustin Noble) in Colorado during which no methamphetamine was located or seized

(although a K-9 deployed by agents provided a positive alert on the vehicle). Agents later developed the belief through their surveillance, using CI Delgado/Hageman, at least ten pounds of methamphetamine was hidden in the gasoline tank of the rental vehicle. Agents also determined through their use of the CIs and other surveillance, including physical observation, that Torres-Perez and Noble had travelled in the rental vehicle (same as stopped in Colorado) to Ruby Blankenship's rural Dickinson County residence on March 17, 2020.

Agent Nate Ewalt testified to his observation and identification of the rental vehicle in question arriving at rural Dickinson County Iowa property (later determined to belong to co-conspirator Ruby Blankenship). (Trial Transcript 172-183). Agent Ewalt also testified to his observation and identification of the defendant, a short time later, also arriving at the Blankenship property a short time after the rental vehicle. (Id.). Agent Ewalt further testified to his observation and identification of the defendant, again a short time later, driving the rental vehicle from the residence into the machine shed on the Blankenship property. (Id.).

Agents continued to conduct surveillance on the Blankenship property, including observation of various persons in and out of the residence and machine shed and arrival, movement and exit of various vehicle on the property. These observations by agents, including the arrival of the rental vehicle with Torres-Perez and Noble, arrival of the defendant in a separate vehicle and defendant's driving of the rental vehicle into (and out of) the machine shed as well as various other

persons arrivals, movements and exits to and from the property was conformed/corroborated by Ring doorbell audio/video recordings admitted as evidence. (Trial Transcript pgs. 129-141; Government Exhibits 210-223).

Agents Gill and Schmitt testified to their use of the same two CIs to set-up and execute a second controlled buy of one-pound of methamphetamine at the Blankenship property from Torres-Perez (being directed to this property for said methamphetamine transaction by Torres-Perez). (Trial Transcript pgs. 76-82). Agents provided the CIs with $3000 in pre-serialized money which the CIs paid to Torres-Perez inside the machine shed and received one pound of methamphetamine in exchange, therefore. (Id.). The CIs returned from the Blankenship property, provided the methamphetamine to the agents and described the scene and persons inside the machine shed to the agents, including the presence of a white male subject and a Hispanic male subject, later identified as Dustin Noble and defendant, Carmelo Valdez Romero, in removal of pound packages of methamphetamine from a vehicle's gas tank (strong odor of gasoline w/ seats removed from the vehicle). (Id.). The next day after the controlled buy/search warrant operation, the CI (Hageman) identified the defendant by photograph (as well as Dustin Noble) as the two persons inside the machine shed--specifically removing packages of methamphetamine from the vehicle's gas tank. (Trial Transcript pgs. 81; 513-14). Agent Gill, later on March 17, 2020, based on the overall investigation, drafted and obtained approval of a State of Iowa search warrant for the Blankenship property, including the machine

5

shed and vehicles thereabout and assisted in the coordination thereof.   (Trial Transcript pgs. 82-82, 85-92).

Agent Nissen testified regarding his surveillance conduct including a traffic stop on March 17, 2020, as assisted by Iowa State Trooper Axford and others, of a vehicle leaving the Blankenship property operated by co-conspirator Meghan Renken and occupied by co-conspirator, Jared Wolthuis.   (Trial Transcript pgs. 183-200).  Agents Nissen and Axford, during a search of the vehicle, seized three pounds of methamphetamine (later confirmed by DEA Lab report)from inside the vehicle, two pounds in a box in the back seat and one pound hidden in the front seat, and packaging items.  (Id.).

Agent Hogue, testified regarding his surveillance conduct including a traffic stop on March 17, 2020, as assisted by Iowa State Trooper Kurtz, of a vehicle (the same rental vehicle stopped in Colorado) leaving the Blankenship property and operated by defendant (identified by ID and documentation inside the vehicle as Carmelo Valdez Romero).  (Trial Transcript pgs. 200-212).  Agents Hogue and Kurtz, during a search of the vehicle, seized one pound of methamphetamine (later confirmed by DEA Lab report) from inside an orange case inside the vehicle.  (Id.).

Agent Schmitt coordinated the execution of the search warrant at the Blankenship property, including the seizure of 15 one-pound packages of plastic wrapped methamphetamine (confirmed by DEA Lab report) from a safe inside the machine shed (with the assistance of Torres-Perez) as well as observation and photograph of various buckets, coolers with packaging (plastic and duct tape)

6

remnants and significant observation/smell of gasoline thereabout. (Trial Transcript pgs. 212-237).

Agent Gill later on March 17, 2020, also located and seized $1600 (which he matched as part of the pre-serialized buy money used in the controlled one-pound methamphetamine buy earlier that day) from the persons of Torres-Perez ($200) defendant Valdez Romero and Torres-Perez's minor daughter ($1400 split between the two of them). Agent Gill also testified about one week after the controlled buy/search warrant execution, during routine questioning, defendant first denied having driven the rental vehicle into the machine shed, but after confronted with fact agent had video evidence of it, then admitted it. (Trial Transcript pg. 113-114).

A number of co-conspirator/cooperating witnesses testified regarding each of their involvement in this overall conspiracy, including conduct, observations and their statements and other co-conspirator communications in the course thereof.

Ruby Blankenship testified to her involvement in this methamphetamine conspiracy. (Trial Transcript pgs. 237-280, 297-327, 330-332). Blankenship discussed her initial involvement in the methamphetamine distribution conspiracy over several weeks in early 2020, with co-conspirators Dustin Noble, Jared Wolthuis, Meghan Renken, and source "Puppet" (related to a drug debt of Blankenship's son Zach Hayes). Later, Blankenship, as well as Noble, Wolthuis, and Renken became involved in the distribution of methamphetamine with Delfina Torres-Perez and defendant, Carmelo Valdez Romero. Blankenship testified to her drug trafficking involvement with these co-conspirators in the acquisition of 20

7

pounds of methamphetamine from sources in California, transport thereof by rental vehicle back to her rural property during the week leading up to March 17, 2020. (Id.). Blankenship testified to her meeting(s) with Torres-Perez, defendant, at her residence and later Wolthuis and Renken, at their residence a few days before March 17, 2020, when they all discussed the plan for Noble and Torres-Perez's acquisition of several pounds of methamphetamine from source(s) in California, including air flight to Las Vegas, rental car (of a specific type due to ease of gas tank access for hidden drugs) from there to California and return to Iowa. Wolthuis and Renken were later provided with one pound of methamphetamine to sell to make money for the planned trip to California and provided some money to Blankenship for delivery to Torres-Perez and Noble during their trip. Blankenship provided the airfare to Noble and Torres-Perez up front and later wired/had wired money to them during the trip (provided, in part by Wolthuis/Renken) for expenses. On March 17, 2020, Torres-Perez and Noble returned to Blankenship's residence with 20 pounds of methamphetamine hidden in the gas tank of their rental vehicle. Defendant and Torres-Perez's minor daughter also arrived in a separate vehicle at Blankenship's residence a short time later. Noble was asked by Torres-Perez, through Blankenship to assist defendant in the removal of the methamphetamine from the gas tank of the rental vehicle in the machine shed on Blankenship's property. Blankenship was 's alleged drug debt was to be cancelled/fulfilled by her conduct regarding this methamphetamine transport from California to Iowa. Blankenship was also provided money (about $1400) by Torres-Perez as

8

reimbursement for the airfare and money provided previously to Torres-Perez and Noble's travel expenses. Blankenship testified to her cooperation, execution of a cooperation plea agreement, guilty plea and sentence for conspiracy to distribute methamphetamine for her conduct in this conspiracy to distribution methamphetamine, including her receipt of and hope for a reduction in her federal sentence for her substantial assistance (cooperation) in this case.

Dustin Noble testified to his drug trafficking involvement with co-conspirators/co-defendants, Ruby Blankenship, Delfina Torres-Perez, Jared Wolthuis, Meghan Renken, and defendant over the course of several weeks in early 2020, culminating with the acquisition of 20 pounds of methamphetamine from sources in California, transport thereof by vehicle back to Northwest Iowa during the week leading up to March 17, 2020. (Trial Transcript pgs. 332-401). Noble testified to specific details of his and defendant's conduct and attempted communications, including hand gestures and broken English, in assisting each other in the removal of about 20 one-pound packages of methamphetamine hidden in the gas tank of a rental vehicle inside Blankenship's machine shed. Specifically, defendant removed the back seat and fuel pump of the rental (load) vehicle and physically assisted Noble in the removal of about 20 one-pound sealed-type packages containing methamphetamine and placement of such in buckets and/or coolers in an "assembly-line" like process. Other co-conspirators also assisted in the removal of packaging and/or wiping/cleaning of the packages which were soaked in and smelled of gasoline. Noble had previously traveled by airline and rental vehicle

9

with Torres-Perez to Las Vegas/California and back to acquire the methamphetamine and recalls their having to stop every 200 miles or so to fill-up with gasoline--due to the hidden storage of the methamphetamine in the gasoline tank. Noble described a traffic stop of him and Torres-Perez in Colorado during which law enforcement failed to locate the methamphetamine hidden inside the vehicle's gas tank. Noble was to receive money and methamphetamine for his assistance and received some clothes during the trip as well. Noble testified to his cooperation, execution of a cooperation plea agreement, guilty plea and sentence for conspiracy to distribute methamphetamine for his conduct in this conspiracy to distribution methamphetamine, including his receipt of and hope for a reduction in his federal sentence for his substantial assistance (cooperation) in this case.

Jared Wolthuis testified to his (and his girlfriend/co-conspirator Meghan Renken's) involvement in this methamphetamine conspiracy, including originally in the assistance to the distribution of methamphetamine over several weeks in early 2020 for/with co-conspirator Ruby Blankenship and Dustin Noble, and later assistance for/with Blankenship, Noble, Delfina Torres-Perez and defendant (whose name he did not learn until later) in the acquisition of methamphetamine by vehicle transport from California to Iowa. (Trial Transcript pgs. 401-458). Wolthuis further testified to his and Renken's meeting with Blankenship, Torres-Perez and defendant at his/her residence a few days before March 17, 2020, when they all discussed the plan for Noble and Torres-Perez's acquisition of several pounds of methamphetamine from source(s) in California, including air flight to Las Vegas,

10

rental car (of a specific type due to ease of gas tank access for hidden drugs) from there to California and return to Iowa. Wolthuis and Renken were later provided with one pound of methamphetamine to sell to make money for the planned trip to California and provided some money to Blankenship for delivery to Torres-Perez and Noble during their trip. Later on March 17, 2020, Wolthuis and Renken went to Blankenship's rural Dickinson County property at her request and determined that Torres-Perez and Noble had returned from California with multiple pounds of methamphetamine. Wolthuis observed, in the machine shed, Noble and defendant (same Hispanic male subject previously seen at their residence with Torres-Perez) working in and about a vehicle, with the seats pulled out and the back hatch open, in the removal from the gas tank and handling of what appeared to be one pound packages of methamphetamine, including placing such in buckets/coolers nearby for an assembly-line like process. Later Wolthuis and Renken were provided with three pounds of methamphetamine by Torres-Perez and Blankenship (one pound for Wolthuis and Renken for distribution and two pounds to hold for Blankenship to acquire later for distribution). Wolthuis and Renken were stopped by law enforcement leaving Blankenship's property and the three pounds of methamphetamine was seized from their vehicle. Wolthuis testified to his cooperation, execution of a cooperation plea agreement, guilty plea and sentence for conspiracy to distribute methamphetamine for his conduct in this conspiracy to distribute methamphetamine, including his receipt of and hope for a reduction in his federal sentence for his substantial assistance (cooperation) in this case.

11

Meghan Renken testified to her (and her boyfriend/co-conspirator Jared Wolthuis') involvement in this methamphetamine conspiracy, including originally in the assistance to the distribution of methamphetamine over several weeks in early 2020 for/with co-conspirator Ruby Blankenship and Dustin Noble, and later assistance for/with Blankenship, Noble, Delfina Torres-Perez and defendant (whose name he did not learn until later) in the acquisition of methamphetamine by vehicle transport from California to Iowa. (Trial Transcript pgs. 458-497). Renken testified to her and Wolthuis' meeting with Blankenship, Torres-Perez and defendant at her residence a few days before March 17, 2020, when they all discussed the plan for Noble and Torres-Perez's acquisition of several pounds of methamphetamine from source(s) in California, including air flight to Las Vegas, rental car (of a specific type due to ease of gas tank access for hidden drugs) from there to California and return to Iowa. Wolthuis and Renken were later provided with one pound of methamphetamine to sell to make money for the planned trip to California and provided some money to Blankenship for delivery to Torres-Perez and Noble during their trip. Later on March 17, 2020, Wolthuis and Renken went to Blankenship's rural Dickinson County property at her request and determined that Torres-Perez and Noble had returned from California with several pounds of methamphetamine. Renken observed, in the machine shed, Noble and defendant (same Hispanic male subject previously seen at their residence with Torres-Perez) working in and about a vehicle, with the seats pulled out and the back hatch open, in the removal from the gas tank and handling of what appeared to be one-pound packages of

12

methamphetamine, including placing such in buckets/coolers nearby in an assembly-line like process. Later Wolthuis and Renken were provided with methamphetamine (unknown amount) by Torres-Perez and Blankenship. Wolthuis and Renken were then stopped by law enforcement leaving Blankenship's property and three pounds of methamphetamine was seized from their vehicle. Renken testified to her cooperation, execution of a cooperation plea agreement, guilty plea and that her sentencing is pending for conspiracy to distribute methamphetamine for her conduct in this conspiracy to distribute methamphetamine, including her hope for a reduction in her federal sentence for her substantial assistance (cooperation) in this case.

William Hageman testified to his involvement as a confidential informant (CI) along with his wife (Kerri Hageman) in this case (after he also served as a CI in other investigations, including his own case), including actions and observations during a one-pound controlled buy of methamphetamine at a rural Iowa farm property on March 17, 2020. (Trial Transcript pgs. 497-525). Hageman testified that during this controlled-buy operation he and his wife went into a machine shed on the property to conduct the methamphetamine transaction ($3000 for one pound with Torres-Perez) and also observed a white male subject and a Hispanic male subject working in and about a vehicle, with the seats pulled out and the back hatch open, in the removal and handling of what appeared to be one pound packages of methamphetamine from the vehicles gasoline tank (due to strong odor of gasoline) and placing such in buckets/coolers nearby. Hageman subsequently identified

13

photographs of the two persons he observed removing the pacjakges of methamphetamine from the vehicle in the machine shed, including the defendant. Hageman testified to his cooperation, execution of a cooperation plea agreement, guilty plea and sentence for conspiracy to distribute methamphetamine for his conduct in this conspiracy to distribute methamphetamine, including his receipt of and hope for a reduction in his federal sentence for his substantial assistance (cooperation) in his case.

The government asserts the physical evidence in this case, along with agent testimony of their conduct and observations, combined with the co-conspirator/cooperator testimony and common sense inferences regarding said evidence clearly establishes defendant's involvement in the possession with intent to distribute methamphetamine and/or the aiding and abetting of another or others therewith.

When examined in a light most favorable to the government, the evidence is more than sufficient to establish a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. Therefore, the court should deny defendant's motion for judgment of acquittal.

## II.    CONCLUSION

WHEREFORE, based on the reasons stated above, the United States respectfully requests that the court deny defendant's motion(s) for judgment of acquittal.

14

Respectfully submitted,

TIMOTHY T. DUAX
Acting United States Attorney

By: *s/ Shawn S. Wehde*

SHAWN S. WEHDE
Assistant United States Attorney
600 4th Street, Suite 670
Sioux City, IA  51101
(712) 255-6011
(712) 252-2034 (Fax)
Shawn.Wehde@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a
copy of the foregoing document to which
this certificate is attached to the parties
or attorneys of record, on April 29, 2022.

UNITED STATES ATTORNEY

BY:   s/  Shawn S. Wehde

15